# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**ROXANNE HENDON,**
      **Plaintiff,**

     v.                                              Case No. 16-C-0941

**WISCONSIN BELL, INC.,**
      **Defendant.**

___

## DECISION AND ORDER

Roxanne Hendon alleges that her former employer, Wisconsin Bell, Inc., failed to reasonably accommodate her disability, in violation of the Americans with Disabilities Act ("ADA"). Before me now is Wisconsin Bell's motion for summary judgment. *See* Fed. R. Civ. P. 56.

## I. BACKGROUND

Between June 2001 and August 2009, Hendon worked for Wisconsin Bell, which is part of AT&T. At all times during her employment, Hendon was a member of the Communication Workers of America, and the terms of her employment were governed by a collective bargaining agreement between the company and the union. Def. Prop. Finding of Fact ("PFOF") ¶ 4. In 2005, Hendon was diagnosed with bipolar affective disorder. Since her diagnosis, Hendon has received treatment from a psychiatrist and psychologist, both of whom have offices in Milwaukee.

Hendon began her employment at Wisconsin Bell as a customer service representative in Milwaukee, Wisconsin. In 2006, Hendon's position was eliminated, but she was able to transfer to a different position within the company located in Waukesha, Wisconsin. In May 2008, Hendon learned that her position was being

"surplused." A surplus is a reduction in the workforce and is governed by the collective bargaining agreement. Once a union employee like Hendon is identified as being part of a surplus, he or she may attempt to find a new position in the company by, for example, filling an open position. The process of placing surplused employees into new positions is governed by the collective bargaining agreement. The parties agree that, under the collective bargaining agreement, Wisconsin Bell "has virtually no discretion in assigning jobs to surplused union employees." Def. PFOF ¶ 9.

Following the surplus in 2008, Hendon was able to transfer to a position in Janesville, Wisconsin. As part of the transfer, Hendon moved to Beloit, Wisconsin. While she lived in Beloit, Hendon traveled approximately 75 miles from Beloit to Milwaukee for psychotherapy appointments approximately once a month.

In December 2008, Hendon learned that her new position in Janesville was also being surplused. Hendon again sought to be transferred to a new position within the company. This time, Hendon was offered and accepted a position in Appleton, Wisconsin. However, on March 13, 2009—two days after accepting the Appleton position—Hendon requested short-term disability benefits. At this point, Hendon began to communicate with AT&T's "integrated disability center," which administers employee requests for disability benefits and job accommodations. Hendon's request for short-term disability benefits was approved.

On April 16, 2009, while she was off work and receiving disability benefits, Hendon called the disability center to request a job reassignment to Milwaukee. To support her request for a disability-related reassignment, Hendon provided the disability center with a letter from her psychologist recommending that Hendon be allowed to live

2

and work in the Milwaukee area. The letter stated that Hendon needed to be closer to family members who lived in Milwaukee, that Hendon needed to live closer to her psychologist and psychiatrist in Milwaukee, and that Hendon was taking medications that caused drowsiness and prevented her from driving more than 15 to 30 minutes at a time.

At the time Hendon made her request for a reassignment to Milwaukee, the collective bargaining agreement with Hendon's union was about to expire, and Wisconsin Bell was preparing for a potential strike. As part of its preparations for the strike, the company was fielding requests by management employees for reassignment to "work stoppage" positions for the duration of any strike. In these reassignments, a management employee would be temporarily placed in a position left vacant by a striking union employee. When Hendon called to request reassignment to Milwaukee, the disability representative understood her to be requesting a work-stoppage assignment, and the representative processed the request accordingly. Def. PFOF ¶ 36.[1] But Hendon was a member of the union, not a management employee, and therefore she was not eligible for a work-stoppage reassignment, as in the event of a work stoppage she would be on strike.

On April 22, 2009, the disability representative sent Hendon a letter informing her that, in the event of a work stoppage, she would be reassigned to a customer-service position in Milwaukee. Def. PFOF ¶ 45 (the letter appears in the record at ECF No. 29-

---

[1] The parties dispute the circumstances that caused the representative to think that Hendon was requesting a work-stoppage assignment. However, this dispute is not material to the present motion.

3). The letter also informed Hendon that if she believed that her work restrictions affected her ability to perform the essential functions of her "regular, non-work stoppage assignment," she would have to separately discuss that fact with her current supervisor. ECF No. 29-3. Soon after sending this letter, the disability representative learned from Hendon's supervisor that Hendon was not a management employee and thus was not eligible for a work-stoppage reassignment. Def. PFOF ¶ 49. The disability representative sent Hendon an email informing her that the letter she received was based on an error. Def. PFOF ¶ 50 (the email appears in the record at ECF No. 29-4). The representative informed Hendon that she now realized that Hendon's request for an accommodation related to her usual and customary job duties and not for a work-stoppage reassignment. The representative informed Hendon that to obtain such an accommodation, she needed to "follow up through [her] current disability case." ECF No. 29-4.

Following the representative's direction, Hendon contacted the disability center and requested, through her pending disability case, a job reassignment to Milwaukee. This time, a different representative from the disability center denied Hendon's request on the ground that it was based on Hendon's inability to drive from Milwaukee to Appleton. The representative determined that driving was not an essential function of Hendon's current position, and that therefore she did not need an accommodation to perform her job. On June 19, 2009, the representative informed Hendon that her request was denied "because it fell outside the job accommodation process." Def. PFOF ¶ 54. Wisconsin Bell contends—and Hendon does not dispute—that, even if Hendon's request for a reassignment had not been denied on the ground that her

4

inability to commute more than 30 minutes did not relate to the essential functions of her job, her request would have been denied on the ground that the seniority rules of the collective bargaining agreement prevented the company from transferring her to any vacant positions in Milwaukee. Def. PFOF ¶ 55.

Hendon remained off work, collecting disability benefits, for most of the period from March 13, 2009 to July 21, 2009. On July 22, 2009, Hendon commuted from Milwaukee to her job in Appleton. The next day, she requested to go back on disability leave. On August 5, 2009, the disability center approved Hendon's request for additional disability benefits through August 25, 2009. However, the company later informed Hendon that her disability benefits would end as of August 26, 2009, and that she would have to return to work on August 31, 2009. Hendon did not return to work on that date, and for that reason Wisconsin Bell terminated her employment.

In August 2009, Hendon filed an administrative claim with the Wisconsin Department of Workforce Development, alleging that Wisconsin Bell failed to reasonably accommodate her disability. After exhausting her administrative remedies, Hendon filed the present action.

## II. DISCUSSION

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, I take evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

The ADA makes it unlawful for an employer to discriminate against a "qualified individual on the basis of disability." 42 U.S.C. § 12112(a). A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8). Here, Hendon argues that her bipolar disorder rendered her disabled within the meaning of the ADA. She argues that one restriction associated with her disability is not being able to drive more than 30 minutes at a time. This restriction, in turn, prevented her from attending her job in Appleton when she lived in Milwaukee. Hendon further contends that her disability precluded her from moving to Appleton, because she needed to be near her family and mental-health providers in Milwaukee. Hendon contends that Wisconsin Bell should have reasonably accommodated her disability by transferring her to a vacant position in Milwaukee.

Wisconsin Bell initially argues that Hendon has not proved that she has a "disability" within the meaning of the ADA. Under the Act, a person has a disability if he or she, among other things, "has a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Hendon contends that her bipolar disorder substantially limits her ability to think, communicate, sleep, and work, which are all "major life activities" as defined by the ADA. *See* 42 U.S.C. § 12102(2)(A). She further argues that her bipolar disorder substantially limits her ability to drive. While Hendon acknowledges that courts have held that driving, by itself, is not a major life activity, she contends that a limitation on driving can, in turn, create a disability if it substantially limits another activity that is recognized as a major life activity, such as working. *See Sinkler v. Midwest Property Mgmt.*, 209 F.3d 678, 685 (2nd Cir.

2000). Here, Hendon implies that her inability to drive more than 30 minutes at a time substantially limits her ability to work. For purposes of this motion, I will assume without deciding that Hendon's inability to drive for more than 30 minutes at a time substantially limits her ability to work, and that therefore she has a disability within the meaning of the ADA.

Wisconsin Bell next contends that even if Hendon has a disability, it did not affect her ability to perform the essential functions of her job in Appleton. Rather, Wisconsin Bell argues, the disability affected only her ability to *commute* to her job in Appleton. Wisconsin Bell contends that the ADA only requires employers to make accommodations within the workplace and that it does not require an employer to assist an employee in commuting to and from work. I am not convinced by this argument, as courts have found that an employer is not excused from providing an otherwise reasonable accommodation to an employee simply because it relates to the employee's ability to get to and from work rather than his or her ability to perform while at work. *See, e.g., Colwell v. Rite Aid Corp.*, 602 F.3d 495, 506 (3rd Cir. 2010); *Lyons v. Legal Aid Soc'y*, 68 F.3d 1512, 1517 (2d Cir.1995). And in the present case, Hendon's requested accommodation—a transfer to a vacant position—is the type of accommodation that in many cases would be reasonable. *See* 42 U.S.C. § 12111(9)(B).

However, for purposes of this case, I do not need to decide whether a transfer to a vacant position that is located closer to an employee's home is a reasonable accommodation. This is because, even if it ordinarily would be, here it is undisputed that Wisconsin Bell could not have transferred Hendon to any vacant position in

7

Milwaukee without violating seniority rules contained in the collective bargaining agreement between it and the Communication Workers of America. *See* Def. PFOF ¶ 55. In *U.S. Airways, Inc. v. Barnett*, the Supreme Court held that, "ordinarily," a requested accommodation will not be reasonable if it conflicts with the rules of a seniority system. 535 U.S. 391, 394 (2002). The court held that if an employer shows that the accommodation would conflict with the rules of a seniority system, it is entitled to summary judgment on the question of the reasonableness of the accommodation, "unless there is more." *Id.* Here, it is undisputed that transferring Hendon to a vacant position in Milwaukee would have violated the seniority rules of the collective bargaining agreement. Therefore, unless Hendon can show "something more," Wisconsin Bell is entitled to summary judgment.

In referring to something more, the Court in *Barnett* was referring to "special circumstances" warranting a finding that, despite the presence of a seniority system, the requested accommodation is reasonable on the particular facts. *Id.* at 405. The Court held that the plaintiff bears the burden of showing that special circumstances exist. *Id.* at 405–06. The Court held that, to make this showing, "the plaintiff must explain why, in the particular case, an exception to the employer's seniority policy can constitute a 'reasonable accommodation' even though in the ordinary case it cannot." *Id.* at 406. As examples of the kinds of circumstances that may warrant an exception to the general rule, the Court offered the following:

> The plaintiff might show, for example, that the employer, having retained the right to change the seniority system unilaterally, exercises that right fairly frequently, reducing employee expectations that the system will be followed—to the point where one more departure, needed to accommodate an individual with a disability, will not likely make a

8

> difference. The plaintiff might show that the system already contains exceptions such that, in the circumstances, one further exception is unlikely to matter.

*Id.* at 405.

Here, Hendon has not attempted to demonstrate the presence of special circumstances that would make a departure from the seniority system reasonable. Hendon does not, for example, contend that Wisconsin Bell makes frequent exceptions or changes to the seniority system. Indeed, unlike in *Barnett*, in the present case the seniority rules are embodied in a collective bargaining agreement, and thus Wisconsin Bell cannot make changes to the system without violating the agreement.

Hendon seems to misunderstand *Barnett*. She argues that, in that case, the Court held that "the mere existence of a disability-neutral rule such as a seniority system or a consistently applied policy of hiring the most qualified candidate may not defeat a disabled employee's request for reassignment to a vacant position for which he or she is qualified." Br. in Opp. at 12, ECF No. 33. She argues that, instead, "[a]n employer should be prepared to make a particularized showing of undue hardship in order to defeat such a claim." *Id.* But this is almost exactly the *opposite* of what *Barnett* holds.[2] As just discussed, *Barnett* holds that in almost every case the employer's showing that the requested transfer would violate the rules of a seniority system will be

---

[2] The plaintiff is correct insofar as she states that "a consistently applied policy of hiring the most qualified candidate" will not automatically defeat a disabled employee's request for reassignment to a vacant position for which she is otherwise qualified. That is the holding of *EEOC v. United Airlines, Inc.*, 693 F.3d 760 (7th Cir. 2012). However, in the present case, we are dealing with a seniority system, not a policy of hiring the most qualified candidate. And in *United Airlines*, the Seventh Circuit recognized that seniority systems are different than a policy of hiring the most qualified applicant, and that "in the run of cases" seniority rules will trump an employee's need for an accommodation. *Id.* at 762–64.

9

sufficient to show that the transfer is not a reasonable accommodation. Once the employer makes this showing, the burden shifts to the plaintiff to demonstrate the presence of special circumstances that would make a transfer in violation of seniority rules reasonable. If the plaintiff makes this showing, only then does the burden shift back to the employer to show undue hardship. Here, Wisconsin Bell has shown that the requested transfer would violate the rules of a seniority system, and the plaintiff has not satisfied her burden to show special circumstances. Accordingly, Wisconsin Bell is entitled to summary judgment on the question of the reasonableness of the accommodation. Resort to the undue-hardship exception is unnecessary.

For these reasons, I conclude that Hendon has not shown that a jury could reasonably find that she was entitled to a transfer to a vacant position in Milwaukee as a reasonable accommodation. Moreover, Hendon does not contend that any other accommodation would have been possible.[3] Therefore, Wisconsin Bell's motion for summary judgment will be granted.

---

[3] Hendon does contend that Wisconsin Bell failed to engage in the interactive process called for by the ADA. However, "the failure to engage in the interactive process required by the ADA is not an independent basis for liability under the statute, and that failure is actionable only if it prevents identification of an appropriate accommodation for a qualified individual." *Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1039 (7th Cir. 2013). As discussed in the text, Hendon has not shown that any reasonable accommodation was available. Therefore, Wisconsin Bell's alleged failure to engage in the interactive process is not a basis for liability.

## III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that Wisconsin Bell's motion for summary judgment (ECF No. 27) is **GRANTED**. The Clerk of Court shall enter final judgment.

Dated at Milwaukee, Wisconsin, this 19th day of April, 2018.

                                                    s/Lynn Adelman
                                                    LYNN ADELMAN
                                                    United States District Judge